# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| TAMMY R. HURLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-CV-108 NAB |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Tammy R. Hurley's appeal regarding the denial of disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 5.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

### I.   Issue for Review

Hurley presents one issue for review. She asserts that the administrative law judge ("ALJ") should have given her treating doctor's medical opinion controlling weight when

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

assessing her claim. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

Hurley's last date of eligibility for disability insurance benefits was December 31, 2016. Because Hurley's last date insured is December 31, 2016, Hurley has the burden to show that she had a disabling impairment before her insured status expired for disability insurance benefits. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)).  "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date [she] was last insured."  *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007)  "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded."  *Cox*, 471 F.3d at 907.  But, the evidence from outside the period cannot serve as the only support for the disability claim.  *Id.*  The ALJ should use the date alleged by the individual if it is consistent with all of the evidence available.  *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).

### III.     Discussion

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2)[2].  All medical opinions, whether by treating or consultative examiners, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and

---

[2] Several Social Security regulations were changed effective March 27, 2017.  The Court will use the regulations effective at the time that this claim was filed in 2014.

3

explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. § 404.1527(c); *see also Hacker*, 459 F.3d at 937.  "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."  *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence."  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted).  The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation."  *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

Dr. Justin Puckett treated Hurley for several years.  (Tr. 408-501, 504-564, 627-38, 698-707.)  Dr. Puckett served as Hurley's primary care physician.  Most of Hurley's medical records are from treatment at Dr. Puckett's office.  Dr. Puckett treated Hurley for anxiety, attention deficit hyperactivity disorder, chronic obstructive pulmonary disease, chronic pain, fibromyalgia,

4

lumbago, irritability, depression, vitamin B12 deficiency, anemia, cervical spondylosis, nonallopathic lesions and somatic dysfunction of the cervical, head, lumbar, pelvic, rib cage, sacral, and thoracic regions.  Dr. Puckett, an osteopathic doctor, provided Hurley osteopathic manipulative treatment.

Dr. Puckett wrote several statements regarding Hurley's medical abilities.  First, Dr. Puckett completed physical and mental medical source statements on Hurley's abilities to do work-related activities on March 28, 2014.  (Tr. 669-71, 677-80.)  Dr. Puckett opined that Hurley could lift and carry up to 20 pounds occasionally and 10 pounds frequently during an 8 hour workday.  (Tr. 677.)  He also opined that she would be able to stand, sit, and walk about 4 hours in an 8 hour walk day.  (Tr. 677.)  He indicated that Hurley would need to shift at will from sitting and/or standing/walking at will during the day and she would sit or stand for 15 minutes before changing position.  (Tr. 677.)  He opined that she would need to walk around less than 50 times in an 8 hour day for 5 to 10 minutes each time.  (Tr. 677.)  He also opined that she would need to lie down at unpredictable intervals 2 to 3 times per day.  (Tr. 677.)  Dr. Puckett stated that "known DDD/DJD, fibromyalgia, treatment by me [undecipherable], labs show inflammation."  (Tr. 677.)  Dr. Puckett opined that Hurley could occasionally twist, stoop (bend), crouch, climb stairs and ladders.  (Tr. 678.)  He indicated that Hurley could frequently reach, handle, finger, feel, and occasionally push/pull.  (Tr. 678.)  Dr. Puckett wrote, "Luckily her upper ext are least affected- however work of UE does exacerbate LBP.  The above represents what she <u>could </u>do, not do comfortable, or repeatedly."  (Tr. 678.)  Dr. Puckett noted that she needed to avoid moderate exposure to extreme cold and avoid concentrated extreme heat.  (Tr. 679.) Finally, he opined that she would be absent from work more than four days per month, her symptoms would cause her to be off task 25% or more of the workday, and she would need to

5

take unscheduled breaks between 15 minutes to four hours due to muscle weakness, chronic fatigue, and pain. (Tr. 680.)

In the Mental Medical Source Statement, Dr. Puckett opined that Hurley had moderate limitations in understanding, remembering, and carrying out simple instructions and interacting appropriately with the public and co-workers. He also opined that Hurley had marked limitations in the ability to make judgments on simple work-related decisions, understanding, remembering, and carrying out complex instructions, the ability to make complex work-related decisions, and interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 669-70.) Dr. Puckett wrote the following:

> Pt known to me for > 5yrs. Has longstanding mental illness. Affects her daily ADLs. Essentially homebound do [sic] to anxiety. Can go out and support person (husband) but no greater than 10-15" in store etc. In order to accomplish my instructions- must be written very clearly & errors still occur. Pt reports problems with making daily home decisions. We have special accommodations for her to come to doctor

(Tr. 669.)

He also wrote, "Pt has real trouble shifting focus- if something out of ordinary occurs, it is often overwhelming & panic inducing i e: I had a student doctor & it took all of us to get her focused and able to complete visit." (Tr. 670.)

Next, Dr. Puckett authored a letter on July 2, 2014. (Tr. 436, 672.) In this letter, Dr. Puckett stated, "both medical and mental health reasons contribute to Ms. Hurley's disability. She is unable to be in large groups of people and cannot go places without an attendant, barely able to stay for more than ten minutes at a time." (Tr. 436, 672.) In 2014, Dr. Puckett supported Hurley's application for a disabled placard affirming that Hurley could not "ambulate or walk 50

6

feet without stopping to rest due to a severe and disabling arthritic, neurological, orthopedic condition, or other severe and disabling condition." (Tr. 674.) He also indicated that she could not ambulate or walk without the use of an assistive device. (Tr. 674.)

Dr. Puckett's final opinion in support of Hurley's disability application was dated March 19, 2018. (Tr. 708.)

> Mrs. Hurley is currently under my medical care. She has been *my* patient since 08/2010. Mrs. Hurley has a long standing history of mental illness & suffers from severe Agoraphobia. The patients anxiety is heavily amplified in public situations outside the home and the patient cannot leave the home without being escorted by her husband, and in a public setting such as a store or office for no greater than 10-15 minutes. The patient is homebound due to the anxiety. In order to accomplish my medical instructions, they must be written out very clearly and errors still occur. Pt has problems with making daily home decisions. We have special accommodations for her to come to the doctor. Pt has real trouble shifting focus if something out of ordinary or routine occurs. It often presents as very overwhelming, panic inducing. etc. On one occasion I had a student doctor shadowing me and due to the new presence during the visit, it took most of the allotted time to get her focused & able to complete the visit. Pt has chronic pain, known DDD, DJD & Fibromyalgia -diagnosed by me. Her panic feeds her pain and visa versa. During the symptom flares her labs show inflammation. Patient has problems sitting or standing for any length of time and needs to change position frequently. The patient presented with the debilitating symptoms in 2010 when she established as a patient. The patients symptoms have increased yearly and since 05/2014 the patients anxiety & range of motion in her lower extremities has worsened at a faster rate. Luckily the patients upper extremities are least affected however, work of UE/hands does exacerbate LBP. Therefore ability to conduct basic activities should be noted to reflect that she cannot do comfortably or repeatedly. The patients chronic pain and Agoraphobia keeps her from working even at a sedentary job. She needs frequent rest during the day to even conduct routine home activities. Her anxiety is daily and would certainly affect her daily reliability if employed. Any change in routine, coworkers, environment would immediately trigger emotional -anxiety,

7

>> focus, comprehension and physical symptoms- pain, Fibromyalgia.

(Tr. 708.)

The ALJ gave partial weight to Dr. Puckett's statements to the extent they were consistent with Hurley's history of chronic pain and mental impairments.  (Tr. 23.)  The ALJ noted that Dr. Puckett's opinion was not entirely consistent with Hurley's testimony that she is capable of living alone, performing some household chores, and caring for two large boxer dogs.  The ALJ stated that Dr. Puckett's statements appear to be based largely on Hurley's subjective complaints.  The ALJ gave greater weight to Dr. Puckett's 2016 statements indicating that Hurley would be capable of performing a light range of work.  The ALJ gave little weight to Dr. Puckett's statements regarding the severity of the claimant's mental symptoms, because they were not consistent with Hurley's objective medical records, including a psychological consultative examination from June 2016.  (Tr. 23.)  Hurley asserts that the ALJ formed her own opinion of the medical evidence instead of relying on Dr. Puckett's opinion.  Further, Hurley contends that Dr. Puckett's mental and physical assessments are supported by medically acceptable clinical diagnostic techniques and his own treatment notes.

Based on the Court's review of the evidence in the record as a whole, the Court finds that the ALJ's assessment is supported by substantial evidence.  As Hurley's treating physician, Dr. Puckett treated her for several years and was aware of her impairments.  But the other factors under 20 C.F.R. § 404.1527(c), including supportability of opinion with medical signs, laboratory findings, and explanation; consistency with the record as a whole; and specialization weigh more heavily against granting Dr. Puckett's opinion controlling weight.

Dr. Puckett treated Hurley for several years regarding her anxiety and depression. He is not a mental health care provider, however, and Hurley did not seek medical treatment for her

impairments from a counselor until late 2015. Dr. James L. Tichenor, a licensed psychologist, conducted a psychological consultative examination of Hurley on June 14, 2016. (Tr. 652-54.) Dr. Tichenor noted that Hurley's reported answers on the Beck Depression Inventory II indicated mild to moderate depression. (Tr. 653.) Hurley's anxiety screen, based on self-reported symptoms, indicated a severe level of anxiety. (Tr. 654.) Dr. Tichenor opined that Hurley "presented as a mild to moderately anxious and depressed individual who is experiencing ongoing posttraumatic symptoms." (Tr. 654.) He also opined "these psychological symptoms do not appear to preclude gainful employment." (Tr. 654.) He wrote that "her daily activities appear to be only minimally restricted by anxiety symptoms." (Tr. 654.) Dr. Tichenor concluded that "her ability to understand and remember instructions, to concentrate, to maintain pace and to complete tasks, and to interact and adapt socially appear lowered but not precluded." (Tr. 654.) He then stated, "she does appear to be able to function psychologically in a full time work environment." (Tr. 654.) The Court also notes that neither of the consultative examiners in this case reported any difficulty with Hurley's examinations due to them being new, unknown providers as described in Dr. Puckett's March 2018 letter. (Tr. 644, 652-54.) The consultative examiners did not note any special accommodations needed for Hurley's visits. The treatment notes from her counseling sessions with licensed professional counselor Tracy Parks and other unidentified counselors from 2015 to 2016 also do not indicate a level of incapacity included in Dr. Puckett's letters regarding Hurley's mental impairments. (Tr. 569-604, 615-26, 657-68, 721-24.)

Next, Dr. Puckett's assessment of Hurley's physical limitations was also contradicted by other evidence in the record. Dr. Puckett's statements that Hurley was homebound and needed constant attendants were not supported by treatment records from the time Hurley was insured.

9

Dr. Puckett's statements were also contradicted by Hurley's testimony and statements to other providers that her husband was only home on the weekends and she took care of herself, her home, and dogs in his absence. (Tr. 70-71, 652-53, 704.)

Dr. Patrick Williams performed a consultative examination of Hurley on June 4, 2016. (Tr. 641-44, 646-48.) Dr. Williams observed that Hurley had a steady and symmetric gait and did not present with an assistive device. (Tr. 643.) He observed that there was tenderness to palpation diffusely, but no joint swelling, erythema, effusion, or deformity. (Tr. 644.) He observed that she was able to lift, carry, and handle light objects. (Tr. 644.) She was able to squat and rise from squatting with moderate difficulty. (Tr. 644.) She was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table with ease. (Tr. 644.) Her tandem walking was abnormal, she could stand, but could not hop on one foot. (Tr. 644.) Dr. Williams diagnosed her with low back pain and fibromyalgia. (Tr. 644.) He noted that she had a positive straight leg raise at 45 degrees bilaterally. (Tr. 644.) Hurley exhibited 4 out of 5 muscle strength with leg flexion and extension bilaterally, secondary to low back pain. (Tr. 644, 647.) She had 16 out of 18 positive fibromyalgia tender points. (Tr. 644.) Dr. Puckett's opinion assessed substantially greater limitations. Dr. Tichenor and Dr. Williams' opinions more closely align with the entire record, including Hurley's activities of daily living. The ALJ did not err in giving only partial weight to Dr. Puckett's opinions regarding the limitations caused by Hurley's physical impairments.

**IV.     Conclusion**

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind

would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014).  The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently.  *Id.*  Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**.  [Docs. 1, 15.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

                                                NANNETTE A. BAKER
                                                UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of August, 2020.